TOWN OF HOLDEN *vs.* DIVISION OF WATER POLLUTION CONTROL & others.

Worcester.   February 15, 1978. — June 7, 1978.

Present: KEVILLE, GRANT, & BROWN, JJ.

*Division of Water Pollution Control. Practice, Civil,* Parties, Declaratory proceeding. *Administrative Law,* Standing, Exhaustion of remedies.

A town was a "person aggrieved" within the meaning of G. L. c. 21, § 46A, and therefore had standing to obtain judicial review of two advisory rulings by the Division of Water Pollution Control granting subdivision developers exemptions from a requirement that they obtain permits for connections to the sewer system serving the town, where the town's interest in the purity of its water was protected by the Massachusetts Clean Waters Act and the threatened injuries alleged were not remote, speculative, or insubstantial. [426-427]

A dispute between the Division of Water Pollution Control and a town, with respect to the official interpretation of a statute, was an "actual controversy" amenable to adjudication under G. L. c. 231A, where the town had standing under G. L. c. 21, § 46A, to obtain judicial review of the agency's determinations. [427-428]

In an action under G. L. c. 231A for a declaration that certain rulings of the Division of Water Pollution Control were in violation of

G. L. c. 21, § 43, the plaintiff was not required to allege that the rulings were part of a practice or procedure or that the violation had been consistently repeated. [428]

Judicial review of a specific determination of the Division of Water Pollution Control was appropriate where the plaintiff had standing as a "person aggrieved" and there was no procedure for further administrative review. [428-429]

Advisory rulings of the director of the Division of Water Pollution Control purporting to exempt two subdivision developers from a statutory requirement that they obtain permits for sewer connections exceeded the director's authority under G. L. c. 21, § 43, in that the rulings were not made pursuant to any regulation duly promulgated by him. [429]

CIVIL ACTION commenced in the Superior Court on June 24, 1976.

A motion to dismiss was heard by *Greaney*, J., and the case was reported to the Appeals Court by *Beaudreau*, J.

*David A. Talman* for Sunnyhill Estates, Inc.

*Phillips S. Davis* for C. B. Blair Builders, Inc.

*John J. O'Brien*, Special Assistant Attorney General, for the Division of Water Pollution Control & another.

*John O. Mirick* for the town of Holden.

BROWN, J. The town of Holden (Holden) brought this action under G. L. c. 21, § 46A, c. 30A and c. 231A against the Division of Water Pollution Control (division), the town of Rutland (Rutland), the Metropolitan District Commission (MDC), C. B. Blair Builders, Inc. (Blair), and Sunnyhill Estates, Inc. (Sunnyhill), alleging that two advisory rulings by the division exempting Blair and Sunnyhill from obtaining permits to connect to the MDC sewer serving Holden and Rutland were in violation of G. L. c. 21, § 43.[1]

Holden and Rutland are served by a trunk sewer which is owned and operated by the MDC. Contracts between

---

[1] General Laws c. 21, § 43(2), as appearing in St. 1973, c. 546, § 9, provides that no person may "construct, effect, maintain, modify or use any sewer extension or connection, without a currently valid permit issued by the director [of the Division of Water Pollution Control], unless exempted by regulation of the director."

Holden, Rutland, the predecessor of the MDC, and the city of Worcester (the sewer in question connects to Worcester's trunk sewer) provide for a renegotiation of the terms thereof when the average daily flow of sewage exceeds 750,000 gallons a day. In a letter issued in January, 1976, to the boards of selectmen of Holden and Rutland the division referred to the fact that the trunk sewer serving Rutland and Holden had reached ninety-five per cent of its capacity and that, according to Holden officials, a significant number of septic tank systems in Holden had failed or were likely to fail and were threatening to create public health problems. The division stated it would therefore issue no permits for sewer extensions or connections unless the connection or extension should be necessary to eliminate an existing or imminent nuisance or public health problem or unless infiltration into the sewerage system should be removed in an amount of gallonage at least double that applied for in a permit. In May and June, 1976, respectively, the division issued the advisory rulings in question here, exempting subdivisions being developed by Sunnyhill and Blair in Rutland from the permit requirements of G. L. c. 21, § 43, on the basis that it was "neither appropriate nor equitable" to subject them to those requirements. The connections for those subdivisions would increase the average daily flow in the trunk sewer to 738,000 gallons.

Holden argues that the advisory rulings violate G. L. c. 21, § 43. The defendants argue that Holden has no standing to bring the action. Following a pretrial hearing a Superior Court judge ruled that Holden had standing to bring the action and denied the defendants' motion to dismiss the complaint. Holden's motion for a preliminary injunction was denied. The trial judge, adopting the foregoing ruling as to standing, ruled that the director of the division had exceeded his statutory authority in issuing the advisory rulings[2] and reported the case to this

---

[2] The judge, however, denied injunctive relief, finding and ruling "that the interests of . . . Blair and Sunnyhill are as extensive as the interest of [Holden]."

court under Mass.R.Civ.P. 64, 365 Mass. 831 (1974).[3]

1. General Laws c. 21, § 46A, inserted by St. 1973, c. 546, § 13, provides that "[a]ny person aggrieved by an order, permit, determination or other action of the director . . . may obtain judicial review. . . ." The defendants contend that Holden is not a "person aggrieved" within the meaning of that provision. To determine whether a party is a "person aggrieved" within the meaning of a statute, it is necessary to look at the purpose of the statute. *Westland Housing Corp.* v. *Commissioner of Ins.*, 352 Mass. 374, 383 (1967). *Gallo* v. *Division of Water Pollution Control*, 374 Mass. 278, 283-284 (1978). The purpose of the Massachusetts Clean Waters Act (Act), of which G. L. c. 21, § 46A, is a part, is to "enhance the quality and value of water resources and to establish a program for prevention, control, and abatement of water pollution." G. L. c. 21, § 27. The requirement that anyone who wishes to discharge pollutants into the waters of the Commonwealth or use any sewer extension or connection must obtain a permit from the director of the division is a means of carrying out that purpose. G. L. c. 21, §§ 42, 43. *Id.* at 291.

Holden argues that the director's rulings may prevent approval of a connection to the sewerage system for the Jefferson Village area in Holden, the construction of which has been ordered by the Massachusetts Department of Public Health and which is necessary "to eliminate the past, present and potential failures of on-site sewage disposal systems in view of the harmful effect of same on the water supply systems of the MDC, the City of Worcester and the Town of Holden." The complaint alleges that the Jefferson Village sewer connection would add 31,000 gallons a day to the system, more than the remaining capacity if connections for the Sunnyhill and

---

[3] The defendant Sunnyhill also filed a notice of appeal. As there has been no final judgment, that appeal will be dismissed.

Blair developments are made.[4] As Holden's interest in the purity of the water supply is an interest protected by the Act, it is a "person aggrieved" within the meaning of G. L. c. 21, § 46A.[5] The defendants argue that the injuries alleged by Holden are remote, speculative and insubstantial and therefore insufficient to establish standing. See *United States* v. *SCRAP*, 412 U.S. 669, 688 (1973); *O'Shea* v. *Littleton*, 414 U.S. 488, 494 (1974). However, the Superior Court judge found that if the maximum gallonage is exceeded, Holden could well be foreclosed from tying into the system, which "would create financial problems [and] health hazards ... for Holden. These spectres are not ephemeral, and create for Holden, in my opinion, enough of an interest, even though once removed at this time, to warrant status as a person aggrieved under G. L. c. 21, § 46A." We see no reason for overturning that finding and ruling that Holden has "the possibility of perceptible harm" and therefore meets the requirement of § 46A. *McDavitt* v. *Planning Bd. of Winchester*, 5 Mass. App. Ct. 827 (1977).[6]

2. The plaintiff asserts that "an actual controversy" exists between it and the division within the meaning of c. 231A by virtue of its contention that the director of the

[4] Although the permit to construct the sewer connection for Jefferson Village has already been issued, the actual connection may not be made until authorized by the division.

[5] Holden has standing in its own right by virtue of its general responsibility for the health and safety of its inhabitants. Holden may also have standing as the representative of the inhabitants of Holden who have an interest in the purity of their water supply. See *Warth* v. *Seldin*, 422 U.S. 490, 511 (1975). See also *Massachusetts Elec. Co.* v. *Massachusetts Comm'n. Against Discrimination*, 375 Mass. 160, 177-178 (1978).

[6] The plaintiff also argued that the director's action threatens its competitive position vis-à-vis Rutland to obtain permits for property owners within its boundaries for use of the remaining limited sewer capacity. However, this interest does not confer standing, as the purpose of the Act is not to confer rights to use a sewer system, but rather to ensure that the sewer system will protect the water supply. Cf. *Gallo* v. *Division of Water Pollution Control*, 374 Mass. at 203.

division exceeded his authority in granting the exemptions. The defendants point out that the judge opined that it is "fairly debatable" whether a controversy exists under c. 231A between Holden and the division; they argue that a possible controversy is not a sufficient basis for granting standing under c. 231A. See *Commissioner of the Dept. of Community Affairs* v. *Medford Housing Authy.*, 363 Mass. 826, 832 (1973). A justiciable controversy exists where, as here, the matter at issue involves a dispute over an official interpretation of a statute. *Woods* v. *Newton*, 349 Mass. 373, 378–379 (1965). *Wolf* v. *Commissioner of Pub. Welfare*, 367 Mass. 293, 296 (1975). *Massachusetts Assn. of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). However, where an actual controversy exists, the particular plaintiff must also demonstrate the requisite legal standing in order to secure a resolution of the controversy. *Id.* at 292. In determining whether a party has standing to bring an action for declaratory relief, as in determining whether a party is aggrieved within the meaning of a statute, it is necessary to look at the statutory purpose. *Westland Housing Corp.* v. *Commissioner of Ins.*, 352 Mass. at 383. *Massachusetts Assn. of Independent Ins. Agents & Brokers, Inc.*, 373 Mass. at 293. Holden has standing to bring an action for declaratory relief for the reasons set out in part 1 above.

3. The defendants Sunnyhill and Blair argue that the allegations of the complaint did not meet the requirement set out in *Gallo* that the plaintiff must show that the order was part of a practice or procedure and that the violation has been consistently repeated. See *Gallo, supra* at 289-290. However, the challenge in *Gallo* was to an allegedly unconstitutional practice, whereas the present case involves an interpretation of a statute and falls within the first rather than the second sentence of c. 231A, § 2.

4. The defendants also argue, citing *Gallo, supra* at 290-292, that the plaintiff has not exhausted its administrative remedies under G. L. c. 21 because "there is no

allegation ... that any permit requested by the plaintiff ... was ever denied." However, G. L. c. 21, § 46A, permits application for judicial review by "[a]ny person aggrieved by an order, permit, determination or other action of the director." Unlike the situation in *Gallo*, where the plaintiffs' objection was merely to a policy enunciated by the division, here the division has already acted, and the appeal is from a specific determination of the division, namely that the Sunnyhill and Blair subdivisions are exempt from the permit requirements of the statute. There is no requirement under § 46A that only persons who are themselves denied permits may appeal. Thus, as there is no procedure for further administrative review of the director's decision, and as the plaintiff is aggrieved by that determination (see part 1 above), we conclude that judicial review under G. L. c. 21, § 46A, is properly allowable.

5. We treat now the plaintiff's argument on the merits that the advisory rulings were not in accordance with G. L. c. 21, § 43. We agree. Although the director of the division has the general power under G. L. c. 30A, § 8, to make advisory rulings with respect to the applicability to any person of any statute administered by the agency, such rulings may not be contrary to the statute. See *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare*, 326 Mass. 121, 124 (1950). General Laws c. 21, § 43(2), provides that "[no] person shall ... construct ... or use any sewer extension or connection, without a currently valid permit ..., unless exempted by regulation of the director." The language of the statute is mandatory. It does not give the director any discretion in enforcement except pursuant to a duly promulgated regulation. The division had issued no regulation concerning exemptions. Therefore, the director's interpretation that the statute does not apply to the Blair and Sunnyhill developments was incorrect, and his purported exemptions of those developments were in excess of his statutory authority.

6. We do not consider the issue of "unclean hands" sought to be raised by the defendants Blair and Sunnyhill, as no such question has been reported to us. See G. L. c. 231, § 111, as appearing in St. 1973, c. 1114, § 199, and Mass.R.Civ.P. 64, 365 Mass. 831 (1974). See also *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 467–469 (1975); *Demoulas Super Mkts., Inc.* v. *Peter's Market Basket, Inc.* 5 Mass. App. Ct. 750, 751–752 (1977).

The appeal of Sunnyhill Estates, Inc., is dismissed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*