Nickerson, Gary A., J.

INTRODUCTION

The plaintiff, E.H. Spencer & Company, LLC (“Spencer”), brought this action against its general liability insurance provider, Essex Insurance Company (“Essex”), seeking to recover money for losses suffered while constructing a residential home. The matter is before the court on Essex’s motion for summary judgment.

BACKGROUND

Spencer is a limited liability company that builds and remodels single-family homes. On September 20, 2003, Spencer purchased a commercial general liability insurance policy from Essex.[1] The policy operated from September 20, 2003 to September 20, 2004 and was renewed for another one-year term. The policy covered losses resulting from construction of homes that did not exceed a height of three stories.
This dispute arises out of two claims for payment for losses Spencer suffered when constructing a home in Chatham, Massachusetts. The first incident occurred on February 6, 2004, when Spencer hired a subcontractor to paint the basement. An employee of the subcontractor opened a window to allow air to circulate during the job. Unfortunately, the employee failed to securely latch the window when closing it and over the weekend rain penetrated damaging the basement walls and floor.
The other event was an ongoing occurrence that most likely began in the fall of 2004. A heating system pipe began leaking after Spencer’s employee punctured it when stapling shingles to a plywood wall of a second floor room that Spencer was finishing in a sea shanty motif. The leak remained undetected for some time, until Spencer eventually discovered it on January 21, 2005, well after the owners had moved in. The leak damaged the walls and floors on all three levels.
In both instances, Spencer filed timely claims with Essex. Both times, however, Essex disclaimed coverage. On both claims, Essex disclaimed coverage under exclusions (j)(5) and (j)(6). In addition, Essex contends that exclusion (1) also applies on the second claim, but the motion at hand can be resolved without resort to exclusion (1).
Section I, subparagraph 2 of the policy lists the exclusion provisions under which Essex disclaims coverage for certain losses. Exclusion (j)(5) disclaims property damage to “(t]hat particular part of real property on which [Spencer] or any contractors or subcontractors working directly or indirectly on [Spencer’s] behalf are performing operations, if the "property damage[1]' arises out of those operations . . .[2] Exclusion (j)(6) disclaims property damage to “[t]hat particular part of any property that must be restored, repaired or replaced because [Spencer’s work] was incorrectly performed on it.”
Spencer filed a three-count complaint on March 7, 2006 seeking declaratory relief, and alleging breach of contract and chapter 93A violations. Essex has moved for summary judgment on all counts.

DISCUSSION

The court shall allow a motion for summary judgment when the record shows no genuine dispute of material fact and the law entitles the moving party to a judgment in its favor. Highlands Ins. Co. v. AeroVox, Inc., 424 Mass. 226, 232 (1997); Mass.R.Civ.P. 56(c) (2009). The moving party bears the burden of showing both the absence of a material fact and that it is entitled to a favorable ruling as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711-12 (1991); Mass.R.Civ.P. 56(c). Here, the facts are undisputed, thus making this action ripe for summary judgment.
Exclusions are insurance policy provisions that allow the insurer to subtract certain pre-identified losses from general liability coverage. Transamerica Ins. Co. v. KMS Patriots LP, 52 Mass.App.Ct. 189, 196 n.9 (2001). Interpreting an exclusion provision presents a determination of law for the court. Finn v. National Union Fire Ins. Co. of Pittsburgh, 452 Mass. 690, 693 (2008). The courts construe exclusion provisions strictly so as not to defeat any intended coverage. Vappi & Co. v. Aetna Cas. & Ins. Co., 348 Mass. 427, 431-32 (1965). “While the insured bears the burden of establishing coverage . . . the burden is on the insurer to establish the applicability of an exclusion.” Finn, 452 Mass, at 693.
Exclusions (j)(5) and (j){6) are known as business risk exclusions, common features in commercial general liability insurance policies. Mid-Continent Cas. Co. v. JHP Development, Inc., 557 F.3d 207, 212 (5th Cir. 2009). These provisions reflect the well recognized principle that commercial general liability coverage does not insure the insured’s work itself; rather, it insures consequential damages stemming therefrom. See Id. In other words, these provisions do not act as performance bonds. See Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92-93 (1995).
The parties argue that one of the two following cases support their respective positions. Essex relies on Jet Line Servs., Inc. v. American Employers Ins. Co., a case involving maintenance of large petroleum storage tanks. 404 Mass. 706, 707 (1989). In Jet Line, the insured’s employees caused an explosion when cleaning the bottom of the tank. Id. at 707-08. Facing an exclusion similar to (j)(5) here, the Supreme Judicial Court held that the policy excluded damages to the entire tank, and not only its bottom part, because the insured was “retained to clean the entire tank, and it was the entire tank on which operations were being performed . . .” Id. at 711. The court went on to state: *580 “[wjhere the insured was retained to perform work on an entire unit of property, and not just a portion of it, the applicability of the exclusion to damage of the entire unit is even more apparent than in cases in which the insured was retained to work on only a part of the unit.” Id. at 712.
Spencer, on the other hand, relies on Frankel v. J. Watson Co., Inc., 21 Mass.App.Ct. 43, 44 (1985). In Frankel, the insured moved the owner’s farmhouse to a new location on which the insured had already built a foundation. Because the foundation had been defectively constructed, the farmhouse sagged once it was placed thereon. Drawing upon New York law, the Appeals Court said that the exclusions did not apply to those damages arising from the sagging of the house because there was a “distinction between damage to the work product of the insured and damage to larger units of which the insured’s work product is but a component.” Id. at 46, citing Adler & Neilson Co. v. Insurance Co. of No. America, 56 N.Y.2d 540 (1982). The Appeals Court also relied on a decision of the Supreme Court of Minnesota to the effect that the insured did not perform work on the house as a whole. Id., citing Ohio Cas. Ins. Co. v. Terrace Enterprises, Inc., 260 N.W.2d 450, 454-55 (1977). The court thus held that only the defective foundation was excluded from coverage. Id.
Jet Line and Frankel are easily reconciled. In Jet Line, the contractor was hired to perform work throughout the damaged fuel tank. In Frankel, the contractor was hired to construct the foundation and to move the existing house onto the foundation but not to reconstruct the house. “Coverage under the exclusionary endorsement is dependent upon the factual situation.” Lusalon, Inc. v. Hartford Accident & Indemnity Co., 400 Mass. 767, 771 (1987), quoting Vinsant Elec. Contractors v. Aetna Casualty & Ins. Co., 530 S.W.2d 76, 78 (Tenn. 1975). Spencer was hired to build the dwelling in question. The entire structure was under Spencer’s command. As such, Jet Line controls and the exclusions (j)(5) and (j)(6) preclude coverage as to both claims. There being no coverage, all three counts of Spencer’s complaint fail.

ORDER

For the foregoing reasons, it is ORDERED that Essex Insurance Company’s motion for summary judgment be ALLOWED.

At the time, Spencer operated as Spencer & Fuller. On November 28, 2003, Spencer was formally organized as a limited liability company under the laws of Massachusetts.

Property damage is “[pjhysical injury to tangible property including all resulting loss of use . . .”